UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| MARTIN LAND, | ) | Civil Action No.: 4:07-cv-00369-RBH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| WAL-MART STORES EAST, L.P., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the court is Defendant's [Docket Entry #23] motion for summary judgment.[1] Plaintiff's complaint alleges three causes of action: 1) breach of contract; 2) breach of contract accompanied by a fraudulent act; and 3) violation of the South Carolina Payment of Wages Act, §§ 41-10-10, et seq.

## Background

Plaintiff, Martin Land, became employed with Wal-Mart as a Co-Manager in Training in November of 1991. In 1998, Land transferred to Store #2703 in Florence, South Carolina, as Store Manager. Arthur Binder ("Binder"), Wal-Mart's District Loss Prevention Supervisor, characterized Land as a "standard performer," both as co-manager and store manager. [Rule 30(b)(6) depo. at 18, Docket Entry #23-7].

As Store Manager, Land was entitled to participate in Wal-Mart's Field Management Incentive Plan ("Plan"), which is a profit sharing plan that allows Field Management Associates to share in a portion of the profits generated by the Wal-Mart store they manage. Under the Plan, eligible Field Management Associates, such as Co-Managers and Store

---

[1] Pursuant to Local Rule of Civil Procedure 7.08, the district court may determine motions without a hearing.

Managers, receive an incentive payment based on a percentage of the store's profits pursuant to the formula contained in the Plan. The Plan year was defined as February 1, 2005 through January 31, 2006, and incentive payments made under the Plan were to be issued by mid-March following the end of the Plan year.

The Plan provides that "[a]ny Store Manager or Co-Manager who is terminated for 'Gross Misconduct - Integrity' during the Plan Year is not eligible to participate in the Incentive Plan." [Field Management Incentive Plan, at 51, Docket Entry #23-5]. Similarly, the Field Management Incentive Guidelines provide that:

> Wal-Mart Store's, Inc. will deny the Incentive otherwise payable to any Store Management who is terminated for "Gross Misconduct Integrity", as defined by corporate policy. In the event you should leave your store and employment or be discharged by the Company for reasons other than "Gross Misconduct Integrity", prior to the end of Wal-Mart's fiscal year, your Incentive shall be determined on your store's Net Profit results through the month of the last day of your employment, not on year-end profits. The incentive will be pro-rated based on the total days you were a Manager. The Incentive will be paid in March following the end of the fiscal year.

[Field Management Incentive Guidelines, at 17, Docket Entry #23-6].

Wal-Mart corporate policy does not specifically define Gross Misconduct - Integrity; however, Wal-Mart's coaching policy provides a non-exclusive list of examples of gross misconduct that include:

- Intentional misuse of Company time (claiming pay for time not worked)
- Theft
- Dishonesty/Compromised Integrity
- Fraud
- Abuse of Associate discount
- Falsification of Company records
- Possession/use of a firearm or other dangerous weapon on

>   Company property
> - Possession/use/consumption of drugs or alcohol on Company property; and/or reporting to work impaired by either substance
> - Serious Harassment/Inappropriate Conduct
> - Fighting/Assault
> - Rude/Abusive conduct toward a Customer/Member or another Associate
> - Under-ringing merchandise or ringing an Associate's own purchase
> - Grazing (i.e., opening packages, purposefully damaging items, removing items from shelf to eat, or any other act which causes a financial loss to the Company)
> - Unauthorized surveillance of any Associate or salaried member of management
> - Negligent sale of restricted items (i.e., alcohol, tobacco, pseudoephedrine, spray paint, R-rated games or movies, or any item restricted by Wal-Mart guidelines or law)
> - Unauthorized sale of any type of firearm
> - Negligent release of prescription medications from the Pharmacy
> - Violation of certain federal, state, or local criminal statutes
> - Any willful use or disclosure of health information in violation of the Health Privacy and Security Standards (i.e., Associate discloses health information without a business reason to disclose or to harm the reputation of the other person)
> - Supervisor or salaried member of management who directed, knew or upon reasonable inquiry should have known that an hourly Associate worked without being properly compensated.

[Wal-Mart Coaching Policy, at 16, Docket Entry #23-7]. Other relevant provisions of the Field Management Incentive Guidelines state that:

> The Board of Directors, Compensation and Nominating Committee reserves the right to continue, modify or terminate any compensation program. While a discretionary incentive may have been paid in the past, whether such payments will be made in the future depend upon various factors such as the Company's financial condition and performance. There is no guarantee that the Company will pay any such incentive. Furthermore, if an incentive is paid, no individual is guaranteed an incentive. *The Company may withhold an incentive or portions thereof, at any time up to and including the day checks are distributed, for any reason, including gross misconduct - Integrity Issue (e.g. theft, violent act, dishonesty/compromised integrity, misappropriation of Company Assets, fraud, and harassment) or any actions deemed to be detrimental to the*

*Company.*

[Field Management Incentive Guidelines, at 18, Docket Entry #23-6] (emphasis added).

In February 2005, Land chose to receive an early payment of his anticipated profit sharing bonus. Accordingly, Land signed an Early Payment of Bonus Letter or Online Compensation Letter ("Letter") that stated he would receive a bi-weekly advance of $576.95. [Online Compensation Letter, Docket Entry #25-4]. In order to receive the bi-weekly advance, Land was required to agree to the following terms contained in the Early Payment of Bonus Letter:

- My Early Payment of Bonus Letter will be deducted from my incentive before any payment is made to me.
- If I am demoted for <u>any</u> reason, my compensation letter will be prorated for the time I was in this position and in this Facility.
- If I am demoted for <u>any</u> reason, my Early Payment of Bonus Letter will not continue to be paid to me.
- *If I am terminated for <u>any</u> reason, my compensation agreement will not be paid, I will receive only what I earned from the profits of my Facility through the end of the month in which I terminated.*
- Incentive amounts will be prorated on the time I am in this Facility. In the event my Facility qualifies for an incentive I will receive the greater of the two; my Compensation Letter or my Facility Incentive but not both.
- Nothing in this letter should be interpreted as creating an employment contract or giving rise to any contractual rights.

*Id*. (emphasis added).

Land received the $576.95 bi-weekly advance from February 2005 through June 2005. The total amount of advance bonus payments Land received was approximately $5,900.00.

On June 25, 2005, Land was terminated for violating South Carolina's Blue Laws, S.C. Code Ann. §§ 53-1-5, et seq., which prohibit the sale of certain items on Sundays before 1:30 p.m. In a statement signed by Land on June 24, 2005, he admitted multiple violations of the

Blue Laws and admitted that he instructed a cashier to violate the law even though the cashier expressed her reservations about selling the restricted items. During his deposition, Land testified that he knowingly made numerous purchases in violation of the Blue Laws, but that he did not think that it was a big deal. [Land depo. at 20-22, Docket Entry #23-5].

On the Exit Interview Form, District Manager Deborah Plumadore listed the reason for Land's termination as Gross Misconduct - Integrity. [Exit Interview, Docket Entry #25-5]. Wal-Mart claims it coded Land's discharge as Gross Misconduct - Integrity because he had violated the law and had instructed others to do so. [Rule 30(b)(6) depo. at 14, 18, 25-26]. Wal-Mart takes the position that under the Incentive Plan, Land's termination for Gross Misconduct - Integrity disqualified him from receiving any further bonus payments.

Land does not protest his discharge from employment with Wal-Mart. Land does protest Wal-Mart's refusal to pay him the incentive pay to which he claims he is entitled. Land contends that, as of the date of his termination, the incentive pay due under the Plan was approximately $77,405.29.[2] Land also disputes the labeling of his discharge as Gross Misconduct - Integrity.

Land brought this lawsuit against Wal-Mart alleging breach of contract, breach of contract accompanied by a fraudulent act, and violations of the South Carolina Payment of Wages Act.

### Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to

---

[2] Land's complaint alleges that the amount owed under the Plan is approximately $72,000.00. The parties do not discuss whether the advance bonus payments Land received should be credited toward the total amount of profits claimed.

5

interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). It is well established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). When the defendant is the moving party and the plaintiff has the ultimate burden of proof on an issue, the defendant must identify the parts of the record that demonstrate the plaintiff lacks sufficient evidence. The nonmoving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Therefore, "[m]ere unsupported speculation . . . is not enough to defeat a summary judgment motion." *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995).

## Discussion

### I.     Breach of Contract

Land claims that Wal-Mart breached its contract to pay him bonus/incentive pay from the profits of his location. Land does not claim that he is entitled to profits through the end

of the Plan year, but only through the end of the month of his termination. Wal-Mart claims that under the Plan, because Land was terminated for Gross Misconduct - Integrity he is not entitled to any share of the profits of his location. Wal-Mart also contends that it has no contract of employment with Land.³

In addition to arguing that his conduct does not rise to the level of Gross Misconduct - Integrity, Land advances two theories for recovery under his breach of contract claim. First, Land contends that the Letter constituted an independent contract under which the incentive payments would be paid regardless of the reason for the manager's termination. Unlike the terms of the Plan or its Guidelines, the Letter does not contain a provision that disqualifies Store Managers or Co-Managers from participation in the Plan if they are discharged for Gross Misconduct - Integrity. Instead, the Letter states that "[i]f I am terminated for *any* reason, my compensation agreement will not be paid, I will receive only what I earned from the profits of my Facility through the end of the month in which I terminated." [Online Compensation Letter, Docket Entry #25-4]. Land argues that the Letter was a unilateral offer by Wal-Mart that could ripen into a binding contract if Land performed his duty of working to increase the profits of Wal-Mart's store. Land also argues that the Letter contains promissory language and a disclaimer, which render the Letter ambiguous and subject to more than one interpretation.

---

³ Wal-Mart's repeated argument that no employment contract existed and that Land was an employee at will is somewhat puzzling given the fact that Land does not protest his termination, but his entitlement to bonus/incentive pay for past work performed. Wal-Mart states in its Memorandum that: "if Land had a contract with Wal-Mart, the contract is composed of the Early Payment of Bonus Letter ("Letter"), the Field Management Incentive Plan, and the Field Management Incentive Guidelines, and that Wal-Mart did not breach that contract. Those documents do not create a contract because they all contain statements that the documents are not to be construed as creating a contract of employment." [Wal-Mart's Memorandum in Support of its Motion for Summary Judgment, at fn. 5, Docket Entry #23-2]. While those documents may not create a contract for future employment, Wal-Mart does not articulate that those documents did not create a right in Land to receive bonus/incentive payments for past work performed if certain conditions were met.

Land's second theory is that the Letter is an extension of the Plan that modifies or limits the terms of the Plan. Land argues that the terms of the Letter conflict with the terms of the Plan and its Guidelines. Land contends that this conflict presents an ambiguity that should be construed liberally and against the party that drafted the document. Land argues that, in light of the ambiguity, the issue of the contract's existence should be submitted to the jury.

### A.     Letter As An Independent Contract

Land's first theory is that the Online Compensation Letter or Early Payment of Bonus Letter constituted an independent unilateral contract[4] that created a vested right to incentive payments on the profits of Land's facility through the end of the month in which Land was terminated, regardless of the reason for termination. For the Letter to have constituted an independent contract it must meet all the essential elements of a contract.

The essential elements of a contract are: 1) offer; 2) acceptance; and 3) valuable consideration. *Sauner v. Pub. Serv. Auth. of S.C.*, 581 S.E.2d 161, 166 (S.C. 2003). In order for a contract to arise, there must be a meeting of the minds of the parties involved with regard to all essential and material terms of the agreement. *Player v. Chandler*, 382 S.E.2d 891, 893 (S.C. 1989). "Certain terms, such as price, time and place, are considered indispensable and must be set out with reasonable certainty." *McPeters v. Yeargin Constr. Co., Inc.*, 350 S.E.2d 208, 211 (S.C. Ct. App. 1986). "Where a contract does not fix a definite

---

[4]     "A unilateral contract occurs when there is only one promisor and the other party accepts, not by mutual promise, but by actual performance." *Sauner*, 581 S.E.2d at 165-66. A bi-lateral contract occurs when both parties exchange promises. *Id.* at 166.

price, there must be a definite method for ascertaining it." *McPeters*, 350 S.E.2d at 211.  To be binding, the parties must manifest assent to each essential and material term of the contract. *Edens v. Laurel Hill, Inc.*, 271 S.C. 360, 247 S.E.2d 434 (1978).

The Letter cannot serve as an independent contract because the document does not set forth a definite method for calculating or ascertaining the <u>annual</u> bonus payable to Land. In this case, for the Letter to constitute an offer by Wal-Mart to pay an <u>annual</u> bonus to Land based on a fixed percentage of the Wal-Mart location's annual net profit, it must express a definite method for calculating the annual bonus. *See McPeters*, 350 S.E.2d at 211 ("[w]here a contract does not fix a definite price, there must be a definite method for ascertaining it"). Here, the Letter merely sets forth the amount of Land's bi-weekly advance on his prospective bonus.  The only figures represented in the Letter are: 1) Land's current annual salary ($50,000.08); 2) the amount of the bi-weekly advance ($576.95); and 3) the annual early payment of bonus amount ($15,000.70).  Notably, the annual early payment of bonus amount referenced in the Letter is substantially less than the amount of bonus Land claims he earned in approximately six months.  Nothing in the Letter suggests that the "annual early payment of bonus amount" referred to in the Letter is based on the actual annual incentive payment payable to Land under the Plan.  Furthermore, the Comments Section of the Letter reads: "[t]he incentive will not be based on anything in this section."  Nothing in the Letter specifically incorporates by reference the Plan or its Guidelines.  There is no suggestion of the percentage of any annual net profits Wal-Mart intended to pay Land at the end of the Plan year.  In sum, although the Letter may constitute an offer by Wal-Mart to pay Land an advance on the location's <u>prospective</u> annual net profit, there is simply no basis for the Letter,

by itself, to constitute an offer by Wal-Mart to pay Land a <u>yearly</u> bonus based on a fixed percentage of the location's annual net profits. Because the Letter did not constitute a sufficient offer by Wal-Mart to pay Land an annual bonus based on the particular Wal-Mart location's annual net profit, the Letter cannot stand as an independent contract.

As the court has found that the Letter did not constitute a sufficient offer by Wal-Mart to pay Land an annual bonus, the Letter cannot stand as a formal modification of the Plan and its Guidelines. Any modification of a written contract must satisfy all elements of a valid contract. *Player*, 382 S.E.2d at 893. As discussed above, the Letter did not constitute a sufficient offer because it did not set forth with any certainty a method for calculating the annual bonus; therefore, the Letter cannot stand as a formal modification of the Plan and its Guidelines.

**B.     Letter As An Extension of Plan/Guidelines**

Land's second theory is that the letter is an extension of the Plan, which modifies or limits the Plan, thereby entitling Land to bonus/incentive pay regardless of the reason for his termination. Wal-Mart appears to concede that the Letter should be read in conjunction with the Plan and its Guidelines. Wal-Mart's Reply Brief states:

> <u>Land agrees with Wal-Mart that the Letter must be read in conjunction with the Plan</u> . .Because the Letter lacks the material terms of a contract - such as the method in which the share of profits would be calculated - the only way for the Letter to be construed as a contractual offer that was sufficiently definite for Land to accept is for the Letter to be read in conjunction with the Plan and the Guidelines as one document. . . if one deems a contract to have been created, the documents must be read together, and therefore, one does not limit the other, but the terms of all the documents together create the offer. "[W]here the agreement in question is a written contract, the intention of the parties must be inferred from the contents of the whole agreement and not from any one of its

10

> several parts." *Harmon v. Bank of Danville*, 339 S.E.2d 150, 153 (S.C. Ct. App. 1985). Likewise, "[w]hether a contract is ambiguous is to be determined from the entire contract and not from isolated portions of the contract." *Farr v. Duke Power Co.*, 218 S.E.2d 431, 433 (S.C. 1975).

[Wal-Mart's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment, at pg. 5, Docket Entry #26].

The Plan, its Guidelines, and the Letter, when read together, as both parties advocate, are inherently ambiguous as to whether a Field Management Associate is entitled to bonus/incentive pay regardless of the reason for termination. The Plan and the Guidelines clearly state that a Field Management Associate who is terminated for Gross Misconduct - Integrity is not eligible to participate in the Plan. "Wal-Mart Store's, Inc. will deny the Incentive otherwise payable to any Store Management who is terminated for 'Gross Misconduct Integrity', as defined by corporate policy." [Field Management Incentive Guidelines, at 17, Docket Entry #23-6]. In contrast, the Letter plainly states that: "[i]f I am terminated for any reason, my compensation agreement will not be paid, I will receive only what I earned from the profits of my Facility through the end of the month in which I terminated. [Online Compensation Letter, Docket Entry #25-4]. The Letter is inconsistent with the Plan and its Guidelines regarding termination and entitlement to bonus/incentive pay and makes no mention of the term Gross Misconduct - Integrity. Furthermore, Wal-Mart has cited to no Plan or Guideline provision that states that the terms of the Plan or its Guidelines govern over any subsequent documents relating to the Plan or its Guidelines.

The documents when read together are clearly capable of more than one interpretation. Under South Carolina law, if a contract is ambiguous, or capable of more than one

interpretation, the question of what the parties intended becomes one of fact for the jury. *Harbour Town Yacht Club Boat Slip Owners' Ass'n v. Safe Berth Management, Inc.*, 421 F. Supp. 2d 908, 910-11 (D.S.C. 2006) (citing *Café Assoc. Ltd. v. Gerngross*, 406 S.E.2d 162 (1991)). The court, therefore, finds a genuine issue of material fact as to what the parties intended with regard to entitlement to bonus/incentive pay under the Plan and whether Land is entitled to bonus/incentive pay for past work performed regardless of the reason for his termination.

## C.     Gross Misconduct - Integrity

The court finds there is a genuine issue of material fact with regard to whether Land's conduct rose to the level of Gross Misconduct Integrity. Wal-Mart contends that Land's conduct constituted Gross Misconduct - Integrity because he violated the law and directed his subordinates to also violate the law. [Rule 30(b)(6) depo. at 14, 18, 25-26].

Wal-Mart's Field Management Incentive Guidelines state that: "Wal-Mart Store's, Inc. will deny the Incentive otherwise payable to any Store Management who is terminated for 'Gross Misconduct Integrity', as defined by corporate policy." [Field Management Incentive Guidelines, at 17, Docket Entry #23-6]. The Guidelines, without defining the term, provide examples of Gross Misconduct - Integrity that include theft, violent act, dishonesty/compromised integrity, misappropriation of company assets, fraud, and harassment. *Id*. at 18.

There is no allegation that Land's conduct constituted theft, violent act, misappropriation of company assets, fraud, or harassment. Arguably, it does not appear that Land exhibited dishonesty in his conduct because he did not attempt to cover up his conduct

12

and accepted responsibility for his actions when he was confronted about it. Of the examples of Gross Misconduct - Integrity found in the Guidelines, "compromised integrity" seems to be the only example under which Land's conduct could arguably fall, yet "compromised integrity" is not defined in the Guidelines.

Wal-Mart's coaching policy provides a non-exhaustive list of conduct that constitutes <u>Misconduct</u> and <u>Gross Misconduct</u>, but there is no distinction for Gross Misconduct - Integrity. Wal-Mart's coaching policy provides that violation of certain federal, state, or local criminal statutes constitutes Gross Misconduct, yet there is no indication as to what types of illegal statutory violations amount to Gross Misconduct. Based on the coaching policy, it is unclear how Wal-Mart would characterize different statutory violations as either Misconduct or Gross Misconduct. For example, under the coaching policy, it is <u>Misconduct</u> to engage in the *unauthorized sale of restricted items (i.e. alcohol, tobacco, etc.)*, while it is <u>Gross Misconduct</u> to *negligently sell restricted items (i.e. alcohol, tobacco, etc.)*.

Land testified that he did not believe that violating the S.C. Blue laws was a big deal. Land did not attempt to cover up his purchases and accepted responsibility for his actions when confronted by his superiors. Whether Land's conduct falls within the realm of Gross Misconduct - Integrity is a question of fact for the jury. A reasonable juror may conclude that Land's conduct, while sufficient to warrant termination, did not rise to the level of Gross Misconduct Integrity.[5] In sum, this court cannot find that, as a matter of law, Land's conduct

---

[5] The court acknowledges the difficulty of passing on such a question of reasonableness when the term "Gross Misconduct - Integrity" does not appear to be specifically defined anywhere in the record before the court. The brief list of examples of Gross Misconduct - Integrity found in the Guidelines is not sufficient for the court to determine the intended meaning of the term Gross Misconduct - Integrity.

amounted to Gross Misconduct Integrity under the Plan.

Accordingly, summary judgment is denied as to Land's breach of contract claim.

## II.     Breach of Contract Accompanied by a Fraudulent Act

In order to recover for breach of contract accompanied by a fraudulent act, the plaintiff must establish: 1) a breach of contract; 2) that the breach was accomplished with a fraudulent intention; and 3) that the breach was accompanied by a fraudulent act. *Minter v. GOCT, Inc.*, 473 S.E.2d 67, 70 (S.C. Ct. App. 1996). "Breach of contract accompanied by a fraudulent act is not simply a combination of a claim for breach of contract and a claim for fraud." *Ball v. Canadian American Exp. Co., Inc.*, 442 S.E.2d 620, 622 (S.C. Ct. App. 1994). Unlike a fraud claim, which goes to the *making* of the contract, a claim for breach of contract accompanied by a fraudulent act "requires proof of fraudulent intent relating to the *breaching* of the contract not merely to its making." *Ball*, 442 S.E.2d at 623 (emphasis added). Fraudulent intent is normally proved by circumstances surrounding the breach. *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503-4 (S.C. Ct. App. 1985). The fraudulent act that must accompany the breach is defined as "any act characterized by dishonesty in fact or unfair dealing." *RoTec Servs., Inc. v. Encompass Servs., Inc.*, 597 S.E.2d 881, 883 (S.C. Ct. App. 2004). Fabricating pretextual reasons for an employee's termination may constitute the fraudulent act that must accompany the breach of contract. *Conner v. City of Forest Acres*, 560 S.E.2d 606, 612 (S.C. 2002).

Here, Wal-Mart has not given a pretextual or false reason for Land's termination. No one disputes that Land was terminated because he violated South Carolina's Blue Laws and instructed his subordinates to do the same. Land readily admits his conduct and does not

14

question his termination on that basis. The dispute is not as to the reason given for termination, but the "labeling" of it in such a fashion that affects entitlement to bonus/incentive payments.

Land argues that Wal-Mart committed a fraudulent act in labeling his discharge Gross Misconduct - Integrity. Land's claim fails, however, because he has offered insufficient evidence to create a genuine issue of material fact as to Wal-Mart's fraudulent intent. Additionally, there is insufficient evidence to create a jury issue as to whether labeling Land's termination as Gross Misconduct - Integrity constituted a fraudulent act.

Wal-Mart claims that it coded Land's termination as Gross Misconduct Integrity because Land violated the law and instructed others to do the same. [Rule 30(b)(6) depo. at 14, 18, 25-26]. Land freely admits these violations, but argues that his actions did not rise to the level of Gross Misconduct. In arguing that Wal-Mart had the requisite fraudulent intent and committed a fraudulent act in connection with the alleged breach, Land relies on the fact that Wal-Mart does not possess a document that specifically states that Blue Law violations constitute Gross Misconduct - Integrity. Land also argues that an apparent conflict of interest exists in that Wal-Mart benefits from not paying Land the incentive pay to which he claims he is entitled. Land contends that Deborah Plumadore, acting as District Manager, arbitrarily decided that Land's actions constituted Gross Misconduct - Integrity.[6] However, Land offers nothing more than mere speculation to support his claim for breach of contract accompanied by a fraudulent act. *See RoTec Servs., Inc.*, 597 S.E.2d at 883 (stating "more is required than mere speculation" to establish fraudulent intent).

---

[6] It appears from the parties' submissions that Land did not depose Deborah Plumadore.

Even though there may be a question of fact as to whether Land's conduct rose to the level of Gross Misconduct - Integrity, it does not automatically follow that there is a jury issue as to whether Wal-Mart acted fraudulently in labeling Land's termination as Gross Misconduct - Integrity. Because Land has offered nothing more than mere speculation, his claim for breach of contract accompanied by a fraudulent act cannot survive summary judgment.

### III.     Violation of South Carolina Payment of Wages Act

Land claims that Wal-Mart violated the South Carolina Payment of Wages Act (the "Act"), S.C. Code Ann. §§ 41-10-10, et seq., when it refused to pay Land the incentive pay that was due to him under the Plan. Land argues that the incentive pay due under the Plan is a form of deferred compensation that amounts to wages under the Act. Wal-Mart argues that its Incentive Plan is a "profit sharing plan" and is excluded from the definition of wages under the Act.

The South Carolina Payment of Wages Act states:

> "Wages" means all amounts at which labor rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or other method of calculating the amount and includes vacation, holiday, and sick leave payments which are due to an employee under any employer policy or employment contract. Funds placed in pension plans or profit sharing plans are not wages subject to this chapter.

S.C. Code Ann. § 41-10-10(2) (emphasis added).

The court finds a genuine issue of material fact as to whether the incentive payments allegedly due to Plaintiff were "wages" as defined by the Act. The Act states that "wages" are "all amounts . . . which are due to an employee under any employer policy or employment contract." *Id*. As discussed above, there is a genuine issue of material fact as to whether the

16

incentive payments sought by Land were due to him under an employer policy or contract, i.e. Wal-Mart's Field Management Incentive Plan. Therefore, the court cannot conclude at this stage that the incentive payments sought by Land are necessarily excluded by the Act.

Wal-Mart places great emphasis on the provision of the Act that states "[f]unds placed in pension plans or profit sharing plans are not wages subject to this chapter." However, the court is not convinced that the legislature meant to exclude profit sharing agreements or bonus/incentive plans like the one in this case. An argument could be made that the type of profit sharing plans referred to in the statute are those regulated by ERISA and not the bonus/incentive plan here.[7] Because the provision refers to *funds placed in* a *profit sharing plan*, the provision seems to indicate an intent to exclude retirement-type profit sharing plans where an employer contributes funds to an employee profit sharing account, as opposed to bonus-type profit sharing agreements or plans where the employee is entitled to share in the company's profits. Importantly, Wal-Mart has presented insufficient evidence to establish that the "funds" which Plaintiff seeks to recover in this lawsuit were actually "placed in . . . a profit sharing plan."

However, notwithstanding this court's finding of a genuine issue of material fact as to

---

[7] Black's Law Dictionary defines profit sharing plan as:
> A plan established and maintained by an employer to provide for the participation in his profits by his employees and their beneficiaries. In order to qualify for tax benefits, the plan must provide a definite predetermined formula for allocating the contributions made to the plan among the participants and for distributing the funds accumulated under the plan after a fixed number of years, the attainment of a stated age, or upon the prior occurrence of some event such as layoff, illness, disability, retirement, death, or severance of employment. Such plans are regulated by the Employee Retirement Income Security Act (ERISA). Black's Law Dictionary 1090-91 (5th Ed. 1979).

whether the incentive payments allegedly due were "wages" under the Act, the court finds that Land cannot recover treble damages or attorney's fees under the Act because there is a bona fide dispute concerning the payment of the wages. *See Rice v. Multimedia, Inc.*, 456 S.E.2d 381, 383 (S.C. 1995) (stating "the imposition of treble damages in those cases where there is a bona fide dispute would be unjust and harsh" and "[w]e do not believe the legislature intended to deter the litigation of reasonable good faith wage disputes; we do believe the legislature intended to punish the employer who forces the employee to resort to the court in an unreasonable or bad faith wage dispute"); *Futch v. McAllister Towing of Georgetown, Inc.*, 518 S.E.2d 591, 598 (S.C. 1999) (declining to reinstate trial court's award of treble damages and attorney's fees because there was a bona fide dispute as to whether the employer owed the employee any wages); *Temple v. Tec-Fab, Inc.*, 635 S.E.2d 541, 544 (S.C. Ct. App. 2006) (reversing trial court's imposition of treble damages and attorney's fees because there was a bona fide dispute over the wages in question). Here, there is a reasonable good faith wage dispute concerning Land's entitlement to incentive/bonus payments under the Plan. First, there is a genuine dispute as to whether Land's conduct rose to the level of Gross Misconduct - Integrity. Second, there is a genuine dispute as to whether Land is entitled to bonus/incentive payments regardless of the reason for his termination, i.e. regardless of whether he engaged in Gross Misconduct - Integrity. Therefore, although Land may have a claim for "wages" due under the Act, he cannot recover treble damages or attorney's fees.

## Conclusion

For the reasons stated above, Wal-Mart's motion for summary judgment is **DENIED in part** and **GRANTED in part**. Summary judgment is **GRANTED** as to Land's claims for: 1)

breach of contract accompanied by a fraudulent act; and 2) treble damages and attorney's fees under the Payment of Wages Act.  Summary judgment is **DENIED** as to Land's claims for: 1) breach of contract; and 2) "wages" due under the Payment of Wages Act.

In light of the court's rulings and Land's claim that the amount owed under the Plan is approximately $72,000.00,[8] the parties are to address, within three (3) days from the date of this Order, whether the amount in controversy requirement of 28 U.S.C. § 1332(a) is met and the propriety of this court's continued jurisdiction over this case.

**IT IS SO ORDERED**.

Florence, SC                                                          s/R. Bryan Harwell
April 15, 2008                                                       R. Bryan Harwell
                                                                     United States District Judge

---

[8] *See* Complaint, at ¶¶ 8, 17, Docket Entry #1-2.